**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Olivia. O. Hans, | ) | No. CV 08-0393-PHX-JAT |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Homesite Indemnity Company, et al., | ) | |
| Defendant. | ) | |
| Homesite Indemnity Company, et al., | ) | |
| Defendant/Counter-Claimant, | ) | |
| vs. | ) | |
| Olivia O. Hans, | ) | |
| Plaintiff/Counter-Defendant. | ) | |
| Homesite Indemnity Company, | ) | |
| Defendant/Counter-Claimant/ Third-Party Plaintiff/Third-Party Counter-Defendant, | ) | |
| vs. | ) | |
| Robert Hanna, | ) | |
| Third-Party Defendant/Third-Party Counter-Claimant. | ) | |
| Robert Hanna, | ) | |
| Third-Party Plaintiff, | ) | |
| vs. | ) | |
| Olivia O. Hans, and Brian R. Warnock, | ) | |
| Third-Party Defendants. | ) | |

Pending before this Court is Defendant Homesite Indemnity Company's ("Homesite") Motion to Dismiss Third-Party Plaintiff Pro Se Robert D. Hanna's counter-Claim (Doc. # 111), Plaintiff Olivia O. Hans and Homesite's Stipulation of Dismissal (Doc. # 119), and several motions filed by Robert Hanna. For the reasons that follow, the Court denies Hanna's various motions, grants Homesite's Motion to Dismiss, and grants Plaintiff and Homesite's Stipulation of Dismissal.

## BACKGROUND

Homesite issued a homeowners insurance policy to Janice Hanna, with an effective date of March 7, 2006 through March 7, 2007. In September 2006, an altercation took place between Robert Hanna, Janice Hanna's adult son residing at her residence at the time, and Olivia Hans. Hans was injured as a result of the altercation. Hans then filed suit in Yavapai County Superior Court, alleging that both Robert and Janice Hanna acted negligently. Homesite provided a defense for Janice Hanna, but denied the defense of Robert Hanna on the basis that the personal liability coverage under Janice Hanna's homeowners insurance policy did not cover Robert Hanna's intentional acts.

In November 2007, Hans and Robert Hanna entered into a Damron Agreement ("Agreement"), wherein Hanna assigned any and all claims he had against Homesite to Hans.[1] Acting as Hanna's assignee, Hans filed a state court action against Homesite, alleging breach of contract, bad faith, and breach of the covenant of good faith and fair dealing. In February 2008, Homesite removed to this Court. Hans and Homesite have now reached a settlement, and both stipulate to the dismissal of this case with prejudice. Hanna, however, has filed a motion to set aside the Agreement, as well as various other motions. Hanna also

---

[1] *Damron v. Sledge*, 460 P.2d 997 (Ariz. 1969). A Damron Agreement occurs when an insurer refuses to defend an insured in a lawsuit. Faced with the risk of personal liability, the insured settles for a specific amount and then assigns to the plaintiff whatever claims the insured has against the insurer for failing to defend the lawsuit. In consideration, the plaintiff enters into a Damron Agreement not to execute against the insured.

- 2 -

filed a counterclaim against Homesite, and third-party claims against Hans and attorney Brian R. Warnock.

**ANALYSIS**

In his first motion, Hanna moves to set aside the Agreement as non-binding. Hanna bases his motion on the fact that Hans did not sign the Agreement until after the present lawsuit was filed. Though Hanna admits to signing the Agreement before this action was filed, and though he moves this Court to find the Agreement "legal" but not binding, nevertheless Hanna asserts that the Agreement is unenforceable based upon the timing of Hans' signature, and the absence of a notary attesting to Hans' signature.

Hanna has not provided any authority, nor has this Court been able to unearth any such authority, for the proposition that an otherwise legal and binding Damron Agreement is converted into a non-binding agreement simply because the assignee fails to sign the agreement prior to filing the lawsuit the Damron Agreement grants the assignee to file. In this case, it was Hanna who was assigning his rights to sue Homesite. As such, it was Hanna's signature that was necessary for an effective transfer of his right to sue Homesite. As the assignee, Hans' ability to file suit against Homesite in the place of Hanna was dependent upon Hanna consenting to the Agreement as affirmed by his signature. The absence of Hans' signature from the Agreement until after she filed this action is immaterial for the purpose of determining whether Hanna assigned his right to sue Homesite. Once Hanna consented to the arrangement memorialized in the Agreement and affixed his signature to the Agreement, Hanna effectively assigned his right to sue Homesite. Hanna admits that he signed the Agreement, that it is "legal," and that he in fact understood what rights he was assigning. Buyer's remorse is no basis for overturning an otherwise legal and enforceable Damron Agreement. The Court finds that the Agreement is binding and enforceable. Likewise, the Court finds that the binding nature of the Agreement is not altered simply because Hans did not sign the Agreement in the presence of a notary.

In a separate motion, Hanna moves "to plead special matters" pursuant to Federal Rules of Civil Procedure 9(b). (Doc. # 118.) Namely, that the Agreement is the product of

fraud. Initially, the Court notes that Rule 9(b) is procedural in nature only, and does not give a separate, substantive right to file an action based upon fraud. In any event, Hanna does not argue what amounts to fraud in the inducement or even fraud in the execution. Rather, Hanna argues that the Agreement is the product of fraud based upon what he alleges are false statements given by Hans to the arresting officers concerning the altercation between Hanna and Hans. Thus, Hanna urges, Homesite denied Hanna representation under the policy because Homesite believed Hans' false statements concerning the incident. If Hans would have given a true account of the facts, Hanna argues, then "the Damron Agreement would not exist and this case would not exist." (Doc. # 118.)

It is the province of Homesite, and not this Court, to assess the credibility of Hans' statements to arresting officers in determining whether to provide coverage and a defense for Hanna. The Court fails to see how Hans' statements to police officers in any way influenced Hanna's decision to enter into the Agreement. As such, the Court denies Hanna's requested relief.

In his next motion, Hanna moves to have any mental health records pertaining to him that are in the possession of Hans or Homesite destroyed. Hanna moved for similar relief previously in this case (Doc. # 66, 70), which the Court denied in its January 15, 2009 Order (Doc. # 95). The Court refrains from revisiting this issue.

Hanna also moves to intervene pursuant to Federal Rules of Civil Procedure 24. Hans and Homesite filed a motion in opposition to Hanna's motion to intervene. Rule 24 provides two types of intervention: (1) intervention as of right, and (2) permissive intervention. The Court finds that neither intervention as of right or permissive intervention are grounds for permitting Hanna to intervene in this case.

An applicant for intervention as of right must show:

(1) [he] has a "significant protectable interest" relating to the property or transaction that is the subject of the action;

(2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest;

(3) the application is timely; and

(4) the existing parties may not adequately represent the applicant's interest. *Canatella v. California*, 404 F.3d 1106, 1112 (9th Cir. 2005) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). As a result of the Agreement, which the Court has upheld as valid and binding, any "significant protectable interest" Hanna may have had in this action has been assigned to Hans. Moreover, Hans and Homesite have filed a stipulation of dismissal after having reached a full compromise and settlement. Given that this case has been ongoing since early 2008, and that Hans and Homesite have reached a settlement, the Court denies Hanna's motion to intervene as of right.

Hanna also seeks permissive intervention under Rule 24(b). An applicant for intervention under Rule 24(b) must satisfy three requirements: "(1) [he] shares a common question of law or fact with the main action; (2) [his] motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly*, 159 F.3d at 412 (citing *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)). *See also Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110-11 (9th Cir. 2002). Again, given the assignment of Hanna's rights under the Agreement, coupled with the untimeliness of Hanna's motion and a full settlement having been reached by Hans and Homesite, the Court denies Hanna's motion to intervene under Rule 24(b). *See* FED. R. CIV. P. 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").

Hanna next moves for the disclosure of several documents pursuant to Federal Rules of Civil Procedure 26, as well as a motion to have his deposition taken. The deadline for discovery in this case has already passed and, in any event, given the current posture of this case as discussed previously, the Court denies Hanna's motion.

Hanna also seeks leave of this Court to submit "at a future date," other documents not contained in his motion. (Doc. # 108.) Hanna does not delineate what these other documents are, or even how they lend support to the various motions that his arguments contained in these motions do not already accomplish. As such, the Court denies Hanna's request to file other documents at a future date.

In addition, Hanna asserts a counterclaim against Homesite. The basis of Hanna's counterclaim is that Homesite committed an act of bad faith by refusing to provide coverage for Hanna, as well as a defense in Hans' lawsuit against Hanna. Homesite moves to dismiss Hanna's counterclaim, arguing that Hanna's counterclaim is a compulsory counterclaim within the meaning of Federal Rules of Civil Procedure 13(a), and must therefore be barred as untimely. Under Rule 13(a), a party who fails to plead a compulsory counterclaim against an opposing party is deemed to have waived that claim. *Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241, 244 (9th Cir. 1967) ("Under Rule 13(a) a party who fails to plead a compulsory claim against an opposing party is held to have waived such claim . . . .").

A compulsory counterclaim is a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(a)(1)(A). Here, Hanna's counterclaim undoubtedly arises out of the same transaction or occurrence as the lawsuit between Hans and Hanna. Hanna's claim of bad faith against Homesite centers around the altercation that took place between Hanna and Hans, and whether Hanna's actions constitute an intentional act such that coverage is precluded under the homeowners policy. Hence, Hanna's claim is a compulsory counterclaim under Rule 13(a) and, as such, was required to be brought at the time that he filed his answer. *See Ralston-Purina Co. v. Bertie*, 541 F.2d 1363, 1367 (9th Cir. 1976) (upholding district court's refusal to allow a compulsory counterclaim where the "motion contained no allegation of timely notice of the claimed defects, and was made six months after the filing of the answer to [plaintiff's] complaint and two months after a pretrial conference.").

Nevertheless, Hanna argues that his counterclaim should be allowed under Rule 13(e) and (f). Rule 13(e) provides: "The court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." Hanna asserts that he was not aware that he had a claim against Homesite until he discovered the police reports containing Hans' statements, as well as other documents pertaining to a related state criminal proceeding. However, Hanna admits to having these

documents in his possession at the time of the filing of his answer, failing only to read them. Such an excuse does not cause a counterclaim to mature or become acquired within the meaning of Rule 13(e). Similarly, such a rationale does not constitute "oversight, inadvertence, or excusable neglect" under Rule 13(f). Thus, the Court finds Hanna's counterclaim against Homesite to be untimely under Rule 13.

Moreover, even if the Court did not find that Hanna's counterclaim was untimely under Rule 13, the Agreement signed by Hanna forfeits his right to pursue any claim for bad faith against Homesite. Hanna's counterclaim is precisely the claim brought by Hans as an assignee of Hanna. Hanna cannot assign his rights to sue Homesite for bad faith, and then proceed to sue Homesite for bad faith. Because the Court finds the Agreement binding and enforceable, Hanna's counterclaim against Homesite is barred.

Therefore, for these reasons, the Court will dismiss Hanna's counterclaim against Homesite.

In separate filings, Hanna asserts third-party claims against Hans and Brian R. Warnock, attorney for plaintiff. Hanna bases his third-party claim against Hans for alleged false statements given by Hans to the arresting officers; and he bases his third-party claim against Warnock for inducing Hanna to sign the Agreement and for causing Homesite to file a counterclaim against Hanna.

The Court need not address the merits of Hanna's third-party claims, as Hanna has failed to heed this Court's repeated warnings as contained in its January 15, 2009 Order (Doc. # 95.). In speaking of the new pleading Hanna would be permitted to file, the Court admonished Hanna that he "must include his entire answer and counterclaim in this ONE document." (*Id.* at p. 3 n. 1.) The Court further noted that "if Mr. Hanna wishes to file a third-party complaint against Ms. Hans, he shall file that **as part of** his answer and counterclaim that are due by February 6, 2009. Again, Mr. Hanna is cautioned that the answer, counterclaim and third-party complaint must all be filed as part of a single document." (*Id.* at p. 3 (emphasis in original).) On February 6, 2009, as a part of his motion to set aside the Agreement, Hanna filed his counterclaim against Homesite. (Doc. # 108.)

On March 2, 2009, Hanna filed his third-party claim against Hans. (Doc. # 115.) Finally, on March 9, 2009, Hanna filed his third-party claim against Warnock. (Doc. # 117, 118.)

In determining whether to dismiss an action for failure to obey a court order, the Court must consider several factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). "This 'test' is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow[.]" *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

"The first two of these factors favor the imposition of sanctions in most cases." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). In the instant case, the Court finds that the public's interest in expeditiously resolving this litigation and the Court's interest in managing the docket weigh in favor of dismissal. Hanna waited for over a year after the removal of this case, and over six months after the filing of his Answer, before filing the third-party claims. Moreover, Hans and Homesite have fully settled their disputes. As such, the first two factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendants, likewise weighs in favor of dismissal. Hans and Homesite have reached a full compromise and settlement of their dispute. To allow Hanna to proceed with a third-party claim against Hans for the very cause of action Hanna assigned to Hans would render the Agreement meaningless. Moreover, Homesite would be faced with exposure to both Hans and Hanna, and, hence, allowing Hans to proceed with his third-party claim would endanger the settlement reached between Hans and Homesite. Thus, factor three weighs in favor of dismissal.

Although the fourth factor – public policy favoring disposition of cases on their merits – weighs against dismissal, the Court finds this factor to be greatly outweighed by the factors

in favor of dismissal as discussed above. The Court finds this to be particularly true where, as here, Hanna would have difficulty establishing an actionable claim given the Agreement.

"The district court need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives." *Henderson*, 779 F.2d at 1424 (citation omitted). The Court specifically warned Hanna that his answer, counterclaim, and third-party complaint must all be filed as part of a single document. (Doc. # 95.) Hanna's failure to respond despite the Court's express admonitions supports the conclusion that imposition of less drastic sanctions would not be beneficial. *See Ferdik v. Bonzelet,* 963 F.2d 1258, 1262 (9th Cir. 1992) ("Moreover, our decisions also suggest that a district court's warning to a party that failure to obey the court's order will result in dismissal can satisfy the 'consideration of [less drastic sanctions]' requirement.").

The Court is not unsympathetic to Hanna's pro se status. Nevertheless, "[a]lthough we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure." *Ghazali*, 46 F.3d at 54 (citing *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987)). Because four factors heavily weigh in favor of dismissal of Hanna's third-party claims, and only one against, the Court finds that dismissal of Hanna's third-party claims against Hans and Warnock is warranted.

Finally, one day prior to oral argument, Hanna filed a document with the Court that contains various requests, including a request to have certain items of evidence removed, and a request "to discuss" his third-party claims. (Doc. # 132.) Hanna's various requests are denied. The Court, as discussed above, has already ruled on Hanna's requests to have evidentiary items removed, and the Court will not revisit the issue. Further, because the Court is dismissing Hanna's third-party claims, and because Hanna fails to articulate what he desires "to discuss" that is not already contained in the parties' various motions and responses, the Court denies Hanna's request to discuss his third-party claims.

Accordingly,

**IT IS ORDERED** that third-party Robert Hanna's Motion for Ruling on the Signatures of the Damron Agreement is denied (Doc. # 108); that Robert Hanna's Motion

| | |
|---|---|
| 1 | to Have the Oral Deposition of Robert D. Hanna Taken is denied (Doc. # 108); that Robert |
| 2 | Hanna's Motion to Have Protected Mental Health Records Destroyed is denied (Doc. # 108); |
| 3 | that Robert Hanna's Motion to Provide Further Documents is denied (Doc. # 108); that |
| 4 | Robert Hanna's Motion to Intervene is denied (Doc. # 117, 118); that Robert Hanna's Motion |
| 5 | of Disclosure to Discover is denied (Doc. # 117, 118); that Robert Hanna's Motion to Plead |
| 6 | Special Matters is denied (Doc. # 117, 118); that Robert Hanna's Motion to Discuss Cross-|
| 7 | Claim Against Olivia Hans is denied (Doc. # 132); and that Robert Hanna's Motion to |
| 8 | Discuss Third-Party Claim Against Brian Warnock is denied (Doc. # 132). |

**IT IS FURTHER ORDERED** that Defendant Homesite Indemnity Company's Motion to Dismiss Third-Party Plaintiff Pro Se Robert D. Hanna's counter-Claim (Doc. # 111) is granted.

**IT IS FURTHER ORDERED** that Robert Hanna's third-party claims against Olivia O. Hans and Brian Warnock are dismissed with prejudice for the reasons contained in this Order (Doc. # 115, 117, 118).

**IT IS FURTHER ORDERED** that Olivia O. Hans and Homesite Indemnity Company's Stipulation of Dismissal is granted (Doc. # 119).

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment of dismissal between Olivia O. Hans and Homesite Indemnity Company based upon their stipulation (Doc. # 119), and judgment in favor of Olivia O. Hans, Homesite Indemnity Company, and Brian Warnock against Hanna on all of his counterclaims and third-party claims. The Clerk of the Court shall close this case.

DATED this 16th day of July, 2009.

_____
James A. Teilborg
United States District Judge